UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZIWEN LI,

Plaintiff,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY S.I. d/b/a
CONNECT POWERED BY AMERICAN
FAMILY INSURANCE and AMERICAN
FAMILY CONNECT PROPERTY AND
CASUALTY INSURANCE COMPANY
f/k/a IDS PROPERTY CASUALTY
INSURANCE COMPANY,

Defendants.

CASE NO. 2:25-cv-01249-TL

ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendant American Family Mutual Insurance Company, S.I.'s ("Connect") Motion to Dismiss. Dkt. No. 10. Having considered the motion, Plaintiff's response (Dkt. No. 12), Defendant Connect's reply (Dkt. No. 13), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the motion.

ORDER ON MOTION TO DISMISS – 1

# I. BACKGROUND

## A. Parties

Plaintiff is Ziwen Li, a resident of Issaquah, Washington. Dkt. No. 1-2 (amended state-court complaint) ¶ 1.1. Prior to the events giving rise to this matter, Plaintiff purchased an automobile insurance policy that was underwritten by IDS Property Casualty Insurance Company ("IDS"). *Id.* ¶ 1.5.

There is considerable confusion surrounding the identity of, and respective naming conventions for, the two Defendants. The Parties have not agreed on consistent nomenclature, and the similarity of the entities' names, combined with Plaintiff's pleading decision to identify "American Family Mutual" as "Connect," while identifying "American Family Connect" as "American Family," adds to the ambiguity. *See* Dkt. No. 1-2 ¶¶ 1.2, 1.4. Plaintiff attempted to clarify the situation in his opposition to the instant motion to dismiss, but the result is further confusion. *See* Dkt. No. 12 at 6–7. The problem is further compounded by Plaintiff's pleading practice of grouping both Defendants together as a single unit. That is, Plaintiff directs the overwhelming majority of his allegations toward "Defendants," without differentiating which Defendant might be liable for which misconduct. "In general, a complaint which 'lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).'" *Seeno v. Discovery Builders, Inc.*, No. C23-4072, 2024 WL 694490, at *5 (N.D. Cal. Feb. 20, 2024) (quoting *Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015)). But Because Defendant Connect does not object to this convention, and because the Court can adjudicate the instant motion without further clarification, the Court will overlook the issue.

In the face of such confusion, the Court will cut through the problem by considering the Amended Complaint (Dkt. No. 1-2) to be the definitive indicator of who is whom. The Court

ORDER ON MOTION TO DISMISS – 2

will thus employ the nomenclature as Plaintiff has pleaded it. In sum:

- Defendant American Family Mutual Insurance Company S.I. d/b/a Connect Powered by American Family Insurance is "Defendant Connect." *See id.* ¶ 1.2.

- Defendant American Family Connect Property and Casualty Insurance Company f/k/a IDS Property Casualty Insurance Company is "Defendant American Family." *See id.* ¶ 1.4.

The first Defendant is American Family Mutual Insurance Company S.I. ("Connect"). *Id.* During the time period relevant to this case, Defendant Connect did business as "Connect Powered by American Family Insurance." *Id.* ¶ 1.2. Plaintiff alleges that "[a]t all times material to this Complaint, Plaintiff had a 'Connect powered by American Family Insurance' policy." *Id.* ¶ 1.3.

The second Defendant is American Family Connect Property and Casualty Insurance Company ("American Family"). *Id.* ¶ 1.4. Plaintiff alleges that in early 2020, Defendant American Family acquired IDS, the original underwriter of Plaintiff Li's automobile insurance policy, thus becoming the underwriter of Plaintiff's automobile insurance policy.[1] *Id.* ¶¶ 1.5, 1.6.

**B.     Facts**

The primary issues in this case are Plaintiff's underinsured motorist ("UIM") coverage and/or his waiver thereof.[2] On or about June 21, 2024, Plaintiff's vehicle was rear-ended by motorist Andrew Bendokas. *Id.* ¶ 3.1. Bendokas had only $25,000 in insurance coverage through his insurer. *Id.* ¶ 3.4. Plaintiff's insurance policy "included liability coverage with coverage limits of $100,000 per occurrence." *Id.* ¶ 3.8. Plaintiff's "Policy included an indication that

---

[1] Defendants deny these allegations. *See* Dkt. No. 9 (Defendant American Family's Answer) ¶ 1.6.

[2] "An 'underinsured motor vehicle' is defined as a vehicle with insufficient insurance to compensate the plaintiff's damages[.]" *Hamilton v. Farmers Ins. Co. of Wash.*, 107 Wn.2d 721, 726, 733 P.2d 213 (1987). "The purpose of UIM coverage is to allow an injured party to recover those damages the injured party would have received had the responsible party been insured with liability limits as broad as the injured party's UIM limits." *Devaney v. Farmers Ins. Co.*, 134 Wn. App. 204, 207, 139 P.3d 352 (2006).

ORDER ON MOTION TO DISMISS – 3

underinsured motorist coverage was rejected, and property damage coverage was rejected." *Id.* ¶ 3.9.

Under WAC 284-20-300(3),

> The "written rejection of [UIM] coverage . . . must include the following statement: 'In order to provide for an informed decision of the potential consequences of rejecting underinsured motorist coverage; the undersigned acknowledges that by rejecting underinsured motorist coverage there is exposure to the risk of not being sufficiently insured for injury and/or damages when involved in an accident with a driver of an underinsured vehicle.'"

The regulation requires further that that "[s]uch notice shall be prominently placed above the signature area and be bold." WAC 284-30-300(3).

On or about June 28, 2024, Plaintiff's counsel "requested verification of the extent of coverage available in a Letter of Representation." Dkt. No. 1-2 ¶ 3.10. Defendants claimed that Plaintiff had waived UIM coverage (*id.* ¶ 3.11), and Plaintiff requested a copy of the waiver (*id.* ¶ 3.12). On January 8, 2025, Plaintiff received an email "indicating that [Plaintiff] completed his application for insurance coverage online and, therefore, Defendants do not require the paper forms." *Id.* ¶ 3.13. On January 16, 2025, "the adjuster for Defendants provided an alleged copy of an online application for insurance with a 'check box' waiving UIM coverage, along with a scanned document with UIM waiver language, that was not signed by Plaintiff." *Id.* ¶ 3.16.

On February 19, 2025, Plaintiff initiated the administrative process for filing an Insurance Fair Conduct Act ("IFCA") complaint, sending a 20-day Notice for Violations to the State Office of the Insurance Commissioner and to Defendants. *Id.* ¶ 3.18; *see* Dkt. Nos. 1-3 (Letter to Defendant American Family), 1-9 (Insurance Commissioner cover sheets). On June 2, 2025, Plaintiff filed a civil action against Defendants in King County Superior Court. Dkt. No. 1-1 (state-court complaint). On June 24, 2025, Plaintiff filed an Amended Complaint. Dkt. No. 1-2.

ORDER ON MOTION TO DISMISS – 4

On July 3, 2025, Defendants jointly removed the case to this Court. Dkt. No. 1 (Notice of Removal).

On July 10, 2025, Defendant Connect filed the instant motion to dismiss (Dkt. No. 10), along with a simultaneous request that the Court take judicial notice of the insurance policy at issue in this case (Dkt. No. 11). On July 31, 2025, Plaintiff responded to the motion (Dkt. No. 12), and on August 7, 2025, Defendant Connect filed a reply (Dkt. No. 13).

## II.   LEGAL STANDARD

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. When reviewing a dismissal pursuant to Rule 12(b)(6), "we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiff[], the non-moving party." *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57 (9th Cir. 2017)).

## III.   DISCUSSION

### A.   Incorporation By Reference

On a motion to dismiss, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial

notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "[T]he incorporation by reference doctrine [applies] to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). A document may be incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

Here, Defendant Connect requested that the Court take judicial notice of "the insurance Policy referenced in Plaintiff's Complaint and Amended Complaint[.]" Dkt. No. 11 at 1. Defendant Connect's request is more appropriately considered a request that the Court consider Plaintiff's insurance policy as part of the Amended Complaint under the incorporation-by-reference doctrine, which is distinct and separate from judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."). The purpose behind incorporation-by-reference is to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006).

It is entirely appropriate here for the Court to consider the insurance policy at issue here as part of the Amended Complaint, without converting Defendant Connect's motion to dismiss into a motion for summary judgment. *See Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) (holding in the context of ruling on a motion to dismiss that

ORDER ON MOTION TO DISMISS – 6

"[a] court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint."); *Enger v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1096 (E.D. Cal. 2009) (applying incorporation-by-reference doctrine to insurance policy where plaintiff had alleged breach of that policy). After all, Plaintiff's first cause of action is for breach of contract; the allegedly breached contract is the "[P]olicy of insurance in force at the time of the loss[.]" Dkt. No. 1-2 ¶ 4.2. Simply put, the policy forms the basis for the Amended Complaint. *See Ritchie*, 342 F.3d at 908 ("The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan[.]").

Defendant Connect has attached the relevant policy (Dkt. No. 11 at 4–26) to its request for judicial notice (*id.* at 1–2), which it filed two minutes after it filed its motion to dismiss. Under such circumstances, the Court will consider the policy to have been attached to the motion to dismiss.

And although Plaintiff objects to Defendant Connect's request, Plaintiff does not dispute the authenticity of the document that Defendant Connect has presented as the relevant policy. *See* Dkt. No. 12 at 11–12. Plaintiff refers to Defendant Connect's use of the policy as Defendant Connect's "present[ing] [its] own version of the facts at the pleading stage." *Id.* at 12 (quoting *Pirani v. Netflix, Inc.*, 710 F. Supp. 3d 756, 766 (N.D. Cal. 2024)). But in merely providing the contract that Plaintiff alleges was breached, Defendant Connect is hardly presenting its *own* version of the facts. Given that Plaintiff does not dispute the authenticity of the contract while maintaining that it forms the basis of his allegation, it follows that Plaintiff relies on these same facts to plead his claim for breach of contract. In other words, the contract represents Plaintiff's facts, too.

ORDER ON MOTION TO DISMISS – 7

Therefore, the Court will consider the policy to have been incorporated by reference into the Amended Complaint.

**B.     Specific Claims**

Plaintiff has pleaded six causes of action against both Defendant Connect and Defendant American Family. In considering Defendant Connect's motion to dismiss, the Court will address each cause of action as against Defendant Connect.

**1.     Breach of Contract**

"A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant"—in other words, (1) contract; (2) breach; and (3) damages. *P.E.L. v. Premera Blue Cross*, 2 Wn.3d 460, 481, 540 P.3d 105 (2023) (quoting *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995)). Defendant Connect argues that Plaintiff's policy did not impose a contractual duty on Defendant Connect, because Plaintiff's policy was issued by Defendant American Family. Defendant Connect asserts, "Plaintiff's Policy is unequivocal in naming [Defendant American Family] as Plaintiff's insurer." Dkt. No. 10 at 3.

The Court agrees. Plaintiff's policy states: "**We** agree with **you,** in return for **your** premium payment, to insure **you** subject to the terms of this policy. **We** will insure **you** for the coverages and limits of liability for which a premium is shown in the declarations of this policy." Dkt. No. 11 at 19. As provided in the definitions section of the policy, "**We, us** and **our** means American Family Connect Property and Casualty Insurance Company." *Id.* As discussed above, American Family Connect Property and Casualty Insurance Company is the Defendant whom Plaintiff identifies as "American Family." *See* Dkt. No. 1-2 at ¶ 1.4. Therefore, the contract clearly identifies Defendant American Family as the insurer that is contractually obligated to Plaintiff, not Defendant Connect.

For his part, Plaintiff argues that he "reasonably believed he had a [Defendant Connect] policy, and the insurance claim handling, investigation, and claim decisions, including the denial, were conducted by [Defendant Connect], who is seeking dismissal." Dkt. No. 12 at 13. This is unpersuasive. Plaintiff provides no case law to suggest why the Court should consider what Plaintiff "reasonably believed" to be more indicative of the contractual terms than the unambiguous—and the definitions section quoted above is decidedly unambiguous with respect to who is insuring whom—contractual language. *See Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995) ("Interpretation of an unambiguous contract is a question of law."). Nor does Plaintiff provide any authority to indicate that an extracontractual entity that conducts the "insurance claim handling, investigation, and claim decisions" is somehow subsumed into the role of contracting party. Moreover, as Defendant Connect correctly points out, "handling an insurance claim does not appear in Washington's definition of insurer." Dkt. No. 13 at 6 (citing RCW 48.01.050 ("'Insurer' defined")).

As the Washington Supreme Court has established, "It is the contractual nature of the undertaking that determines the insurer status." *Washington Ins. Guar. Ass'n v. Dep't of Labor & Indus.*, 122 Wn.2d 527, 532, 859 P.2d 592 (1993). That is, whether an entity is an "insurer" for the purpose of Washington insurance law is based on the *contractual* relationship between the purported insured and the purported insurer. *See id.* (discussing relationship between statutory definitions of "insurance" and "insurer"). The corollary here is that where there is no contract, there is no insurer.

Plaintiff next points the Court to his pleading, asserting that in his Amended Complaint, he has "plausibly alleged that he had an American Family Mutual policy." Dkt. No. 12 at 13. But the language of the policy, upon the document's incorporation by reference into the pleading, makes such an allegation *implausible*. Where, as here, the contract has been incorporated by

ORDER ON MOTION TO DISMISS – 9

reference into the complaint, the Court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. Taking the contractual language as true, it is clear that Defendant American Family owed Plaintiff a contractual duty, not Defendant Connect.

Therefore, this claim, as against Defendant Connect, is DISMISSED.

### 2.    Bad Faith

Washington insurance law contemplates two different kinds of bad faith: common-law bad faith and statutory bad faith. *See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 128, 196 P.3d 664 (2008) ("Washington's insurance bad faith law derives from statutory and regulatory provisions, and the common law."). But "[a]lthough the duty to act in good faith is memorialized by RCW 48.01.030, insurance bad faith is a common law tort, not a statutory cause of action." *P.E.L.*, 2 Wn.3d at 499.

Washington courts have located insurance law's common-law duty of good faith in "the fiduciary relationship existing between the insurer and insured." *Tank v. State Farm Fire & Cas. Ins. Co.*, 105 Wn.2d 381, 385, 715 P.2d 1133 (1985). This fiduciary relationship "exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers." *Id.*

Here, Defendant Connect asserts that "Plaintiff's cause of action . . . fails where his theory against [Defendant Connect] is that it purportedly adjusted Plaintiff's claim[.]" Dkt. No. 13 at 8. Defendant Connect's position is that while Defendant American Family *actually insured* Plaintiff and, consequently, owed Plaintiff a duty of good faith, Defendant Connect merely adjusted and handled Plaintiff's claim. Consequently, Defendant Connect argues, Defendant Connect did not owe Plaintiff a duty of good faith. *See id.* In support of its position,

ORDER ON MOTION TO DISMISS – 10

Defendant Connect cites *Keodalah v. Allstate Insurance Company*, 194 Wn.2d 339, 449 P.3d 1040 (2019). Dk. No. 13 at 8. In that case, the Washington Supreme Court held that a plaintiff could not maintain a cause of action for bad faith against "someone outside the quasi-fiduciary relationship" between the insurer and the insured. *Keodalah*, 194 Wn.2d at 352–53. In Defendant Connect's presentation of *Keodalah*, this means that only the contracted insurer is liable for bad faith.

But as Justice Yu pointed out in her dissenting opinion in *Keodalah*, although the court had held that a defendant who existed outside the quasi-fiduciary relationship between insurer and insured did not owe a plaintiff a *statutory* duty of good faith under the IFCA and its implementing regulations, the court said nothing as to whether that defendant owed a plaintiff a *common-law* duty of good faith. *See id.* at 357–64 (Yu, J., dissenting) (noting, in particular, that "the tort of insurance bad faith 'derives from statutory and regulatory provisions, *and the common law.*'" (quoting *St. Paul Fire*, 165 Wn.2d at 128, (emphasis added))). Subsequent case law, particularly in courts in this District, has held that, as Justice Yu wrote, the *Keodalah* ruling does not bar common law bad-faith insurance claims against non-insurers. As Judge Robart has helpfully explained:

> *Keodalah* did not address or analyze whether an insured may bring a *common law* bad faith insurance claim against an individual insurance adjuster in Washington. In a dissenting opinion that garnered four votes, Justice Mary I. Yu recognized the limits of the *Keodalah* majority's holding, noting that the plaintiff-insured had raised both statutory and common law bad faith claims but that the majority failed to even acknowledge the latter claim.

*Hoglund v. Allstate Ins. Co.*, No. C23-1575, 2023 WL 8528495, at *3 (W.D. Wash. Dec. 8, 2023); *see also Lee v. Amica Mut. Ins. Co.*, No. C24-591, 2024 WL 3293353, at *3 (W.D. Wash. July 3, 2024) (collecting cases). In other words, *Keodalah* does not support Defendant Connect's

ORDER ON MOTION TO DISMISS – 11

argument that Washington law forecloses all bad-faith claims against non-insurers. Common-law claims remain viable.

Here, Plaintiff has plausibly alleged a common-law bad-faith claim against Defendant Connect. *See* Dkt. No. 1-2 ¶¶ 5.4–5.8. Defendants, including Defendant Connect, "cho[se] to unreasonably deny payment of benefits despite Plaintiff Li's cooperation" and "utilized unfair claims handling practices to delay the payment of owed benefits." *Id.* ¶¶ 5.6, 5.7. Therefore, this claim survives Defendant Connect's motion.

### 3. Consumer Protection Act

There are two types of CPA claims: per-se and non–per se. A per-se claim "exists where the legislature declares that a statutory violation constitutes an unfair or deceptive act." *Preston v. SB&C, Ltd.*, 588 P.3d 371, 375 (Wash. 2026). For example, an alleged violation of Washington's insurance regulations might be pleaded as a per-se violation of the CPA. *See, e.g.*, *Hell Yeah Cycles v. Ohio Sec. Ins. Co.*, 16 F. Supp. 3d 1224, 1230–31 (E.D. Wash. 2014) ("'A violation of WAC 284–30–330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a *per se* unfair trade practice by virtue of the legislative declaration in RCW 19.86.170.'" (quoting *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520 (1990)). In contrast, "[a] plaintiff can pursue a non-per-se CPA claim absent a clear statutory violation." *Preston*, 588 P.3d at 375.

Under Washington law, however, as explained in *Keodalah*, a plaintiff can only bring a per-se CPA claim against their insurer because, as enacted and promulgated, only the insurer is bound by the statutory and regulatory framework. *See, e.g.*, *Connelly Law Offices, PLLC v. Cowbell Cyber, Inc.*, No. C25-302, 2025 WL 2256657, at *10 (W.D. Wash. Aug. 7, 2025) (holding that "WAC 284-30-330 applies only to insurers because 'that regulation defines only unfair acts or practices of *the insurer*.'") (quoting *Keodalah*, 194 Wn.2d at 350)). Here, the

ORDER ON MOTION TO DISMISS – 12

insurer—as demonstrated by the terms of Plaintiff's policy—is Defendant American Family, not Defendant Connect. Although Plaintiff argues that Defendant Connect was, in fact, Plaintiff's insurer (*see* Dkt. No. 12 at 17), the terms of Plaintiff's insurance policy clearly indicate that Defendant American Family was his insurer, not Defendant Connect. *See supra* Section III.B.1. That Defendant Connect allegedly "participated in the claims process, directed claims decisions, and held itself out as the insurer" (*see* Dkt. No. 12 at 17) does not, as Plaintiff argues, necessarily make it Plaintiff's insurer for the purposes of enforcing Washington insurance law. *See Connelly Law Offices*, 2025 WL 2256657, at \*10 ("That Cowbell sells insurance, . . . performed the coverage evaluations, and denied coverage for Plaintiff's claim does not show Cowbell is an insurer. These functions say nothing about whether Cowbell is in the business of making contracts of insurance." (citation omitted)).[3] Thus, per-se CPA claims, which apply only to "the insurer," cannot proceed against Defendant Connect.

Even so, Plaintiff may still plead viable *non*-per-se CPA claims against Defendant Connect, as long as he properly pleads all five elements of a CPA claim. *See Preston*, 588 P.3d at 375. "[T]o prevail in a private CPA action . . . , a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Plaintiff's pleading is deficient with respect to the fourth element, damages. "[T]he business and property injuries compensable under the CPA are relatively expansive." *Brown v.*

---

[3] Plaintiff alleges in his Amended Complaint that Defendant Connect "is a foreign insurer licensed and doing business in King County, Washington." Dkt. No. 1-2 ¶ 1.2. This characterization is a conclusion of law, however, which the Court does not accept as true when considering a Rule 12(b)(6) motion. *See Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) ("[W]e do not . . . assume the truth of legal conclusions cast in the form of factual allegations.").

ORDER ON MOTION TO DISMISS – 13

*Transworld Sys. Inc.*, 646 F. Supp. 3d 1328, 1343 (W.D. Wash. 2022) (quoting *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014)). A plaintiff that is demonstrably inconvenienced when a defendant gives them the runaround maintains a basis for alleging CPA damages. *See, e.g.*, *Frias*, 181 Wn.2d at 431 ("Where a business demands payment not lawfully due, the consumer can claim injury for expenses he or she incurred in responding, even if the consumer did not remit the payment demanded."). But Plaintiff's pleading does not meet even this lax standard. Plaintiff "seeks actual damages and exemplary damages against Defendants for each of its violations." Dkt. No. 1-2 ¶ 6.9. What those actual damages are, however, goes completely unexplained.

In *Paris v. Steinberg & Steinberg*, a court in this District found that the plaintiff had insufficiently pleaded damages in a CPA claim where "[p]laintiff pa[id] only lip-service to damages by pleading for an award of 'actual damages pursuant to Chapter 19.16 of the Revised Washington Code.'" 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011). In the *Paris* court's estimation, "[t]he complaint lack[ed] any factual allegations that would support a finding of actual damages." *Id.* "CPA claims are commonly dismissed under similar circumstances where a plaintiff fails to allege injury and causation with any factual support." *Sherlock Invs.-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*, No. C20-129, 2020 WL 4729066, at *7 (W.D. Wash. Apr. 7, 2020) (collecting cases). Here, Plaintiff's assertion that he is entitled to "[a]n award of for [*sic*] compensatory damages, (actual damages) including economic and non-economic damages" (Dkt. No. 1-2 ¶ 10.g) is, without any description or explanation of what those damages might be, mere "lip-service to damages." *Paris*, 828 F. Supp. 2d at 1217.

For his part, Plaintiff's opposition to Defendant Connect's motion fails to explain how he has properly pleaded damages in his Amended Complaint. Plaintiff argues that "'[i]njury' under the CPA is broad and can even be loss of time or costs to investigate the unfair or deceptive

ORDER ON MOTION TO DISMISS – 14

acts." Dkt. No. 12 at 18. This may be so. But Plaintiff does not allege that he spent either time or money investigating the allegedly unfair or deceptive acts, at least insofar as the alleged non-per-se CPA violations are concerned. To be sure, Plaintiff alleges that he "suffered emotional distress, inconvenience and other damages." Dkt. No. 1-2 ¶ 7.7. But these damages are specifically alleged as having been caused by "conduct that violated the Insurance Fair Conduct Act." *Id.* In other words, these damages were caused by the alleged *per-se* violations of the CPA. As discussed above, however, *Keodalah* bars Plaintiff from pleading per-se CPA violations against Defendant Connect. Although Plaintiff asserts that he has pleaded "both per se and non-per se CPA violations" (Dkt. No. 12 at 18), he has not actually pleaded any damages resulting from the non-per-se claim(s). In cabining his alleged damages as having been caused by IFCA violations (*see* Dkt. No. 1-2 ¶ 7.7), Plaintiff alleges that he sustained these damages as a result of the alleged per-se CPA violations, not the non-per-se CPA violations. *See id.* ¶¶ 6.1–6.10. Simply put, the pleading does little more than "pay lip service" to damages stemming from non-per-se violations.

The structure of Plaintiff's pleading dooms his efforts here. In pleading his CPA claim(s), Plaintiff "re-alleges paragraphs 1.1 through 5.10 as though fully set forth fully [*sic*] in this section." *Id.* ¶ 6.1. But the IFCA claim, where Plaintiff actually alleges "emotional distress" and "inconvenience" (*id.* ¶ 7.7), appears after the CPA claim in the Amended Complaint. As a result of Plaintiff's tactical decision on how to order his allegations, as well as the Russian-doll structure of his pleading, the allegations of the IFCA claim are not incorporated into the allegations of the non-per-se CPA claim, and the causal link between the per-se CPA violations

and Plaintiff's damages is missing.[4] Consequently, the claim cannot survive a motion to dismiss. *See id.* (citing *Iqbal*, 556 U.S. at 678).

Therefore, this claim, as against Defendant Connect, is DISMISSED.[5]

### 4. Insurance Fair Conduct Act

"IFCA provides a private right of action for first-party claimants who are 'unreasonably denied a claim for coverage or payment of benefits by an insurer.'" *Cohodas v. Cont'l Ins. Co.*, 717 F. Supp. 3d 1008, 1013 (W.D. Wash. 2024) (quoting RCW 48.30.015(1)). But in *Lease Crutcher v. National Union Fire Insurance Co. of Pittsburgh*, a court in this District noted that, in "creat[ing] a private cause of action in favor of first-party claimants who have been unreasonably denied insurance coverage," IFCA "does not . . . specify the proper defendant[.]" No. C08-1862, 2009 WL 3444762, at *3 (W.D. Wash. Oct. 20, 2009). The *Lease Crutcher* court engaged in an involved process of statutory construction to determine whether "an adjuster handling a claim can be sued for its participation in an unreasonable denial[.]" *Id.* Upon considering "the statute as a whole," including "other sections of the IFCA" and "the legislative history regarding IFCA," the court "conclude[d] that the legislature intended to create a private cause of action for damages and attorney's fees against only the insurer, not its employees or agents." *Id.*

The *Lease Crutcher* holding applies here. In addition to that holding, the Court here finds that the emphasis on the *contractual* nature of insurance in Washington law's definition of "insurer," as discussed above, *see supra* Section III.B.3, complements the *Lease Crutcher* court's

---

[4] The Ninth Circuit recently joined other circuits in expressly disfavoring this pleading format, in which "a party indiscriminately incorporates assertions from one count to another . . . by incorporating all facts or defenses from all previous counts into each successive count[,]" as an impermissible "shotgun pleading." *See Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (internal citation omitted).

[5] Neither Defendant has moved to dismiss this claim as against Defendant American Family.

reasoning. Plaintiff attempts to locate Defendant Connect's liability under the IFCA by relying on the statute's use of the indefinite article "an," pointing to the statute's authorization of a "first-party claimant to bring an action against '**an insurer** engaged in the business of insurance' that has 'unreasonably deni[ed] a claim for coverage or payment of benefits.'" Dkt. No. 12 at 16 (quoting RCW 48.30.015(1)). But as the court in *Connelly Law Offices* found, what Defendant Connect is alleged to have done here "say[s] nothing about whether [Defendant Connect] is *in the business of making contracts of insurance*." *Connelly Law Offices*, 2025 WL 2256657, at *10 (emphasis added). That is, Plaintiff has alleged that Defendant Connect did a great many things (*see, e.g.*, Dkt. No. 1-2 ¶¶ 7.2–7.7)—but as Plaintiff's policy clearly shows, selling a contract of insurance was not one of them.[6]

Plaintiff argues that WAC 284-30-320 "specifies that an insurer can be an 'individual, corporation, association, partnership, reciprocal exchange, interinsurer, fraternal mutual insurer, fraternal mutual life insurer, and any other legal entity engaged in the business of insurance,' or even a person or entity 'authorized or licensed to issue, or who issues any insurance policy in the state.'" Dkt. No. 12 at 16 (quoting WAC 284-30-320). And so it can be. But the principle that any of these things *can* be an insurer does not necessarily make them an insurer—selling a contract of insurance, however, does, and this crucial fact has not been plausibly alleged.

In *Seaway Properties, LLC v. Fireman's Fund Insurance Co.*, a court in this District held that where Fireman's Fund was merely an insurer's agent, it was not liable on plaintiff's IFCA claim, even where it had served as "the face of [plaintiff's] insurer for many of the events giving rise to this lawsuit." 16 F. Supp. 3d 1240, 1256 (W.D. Wash. 2014). Moreover, as alleged in the Amended Complaint, Defendant Connect's alleged violations were regulatory. "Defendants'

---

[6] The Court's finding in this regard is limited to what Plaintiff pleaded. That is, the issue is not whether Defendant Connect is an insurer; it is whether Plaintiff *has pleaded* that Defendant Connect is an insurer.

ORDER ON MOTION TO DISMISS – 17

acts, omissions, or practices alleged in this Complaint exhibit violations of WAC 284-30-330, WAC 284-30-350, WAC 284-30-360, WAC 284-30-370, and other Unfair Claims Settlement Practice Rules adopted under RCW 48.30.010 by the insurance commissioner and codified in chapter 284-30 of the Washington Administrative Code." Dkt. No. 1-2 ¶ 7.8. But "[b]y its plain language, IFCA gives an insured no right to sue solely for a violation of a Washington insurance regulation." *Seaway Props.*, 16 F. Supp. 3d at 1255; *see Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 684, 389 P.3d 476 (2017) ("IFCA does not create an independent cause of action for regulatory violations."). "Regulatory violations matter only when deciding whether to award attorney fees or enhance damages." *Seaway Props., LLC*, 16 F. Supp. 3d at 1255. Here, while Defendant Connect might have mishandled Plaintiff's claim by violating "Unfair Claims Settlement Practice Rules," it was Defendant American Family that allegedly violated the *law* by denying the claim.

Therefore, this claim, as against Defendant Connect, is DISMISSED.

### 5.    Negligence

"A negligence claim requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." *Pellham v. Let's Go Tubing, Inc.*, 199 Wn. App. 399, 408, 398 P.3d 1205 (2017). Here, as discussed above, Defendant Connect owed Plaintiff a common-law duty of good faith, and Plaintiff has sufficiently alleged that Defendant Connect breached that duty. Defendant Connect asserts—wrongly, given the pleaded allegation—that "Plaintiff alleges only a defect in the documentation of the written rejection of UIM coverage under the Policy (a 'defect' which [Defendant Connect] does not believe exists)." Dkt. No. 10 at 6. Plaintiff's Amended Complaint alleges more than a mere record-keeping problem. Rather, Plaintiff broadly alleges that his insurance claim was handled improperly. *See generally* Dkt. No. 1-2. Such improper handling

ORDER ON MOTION TO DISMISS – 18

might have ultimately derived from—or might include, in part—defective record-keeping, but at this stage in the litigation, the allegation is one of negligence. Plaintiff alleges that he "suffered emotional distress, inconvenience, and other damages[.]" Dkt. No. 1-2 ¶ 7.7. The claim, as pleaded, is thin, but it is sufficient to withstand Defendant Connect's motion.

### 6.    Declaratory Judgment

Defendant Connect's motion to dismiss does not discuss Plaintiff's sixth cause of action, for Declaratory Judgment (*see* Dkt. No. 1-2 ¶¶ 9.1–9.5). The Court will not manufacture an argument for Defendant Connect in this regard. Therefore, this claim survives Defendant Connect's motion.

### IV.    CONCLUSION

Therefore, Defendant Connect's Motion to Dismiss (Dkt. No. 10) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

1. Plaintiff's First cause of action for, Breach of Contract as against Defendant Connect, is DISMISSED WITH PREJUDICE.

2. Plaintiff's Third and Fourth causes of action, for CPA and IFCA violations as against Defendant Connect, are DISMISSED WITHOUT PREJUDICE, with leave to amend.

Dated this 18th day of June 2026.

Tana Lin
United States District Judge

ORDER ON MOTION TO DISMISS – 19